**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JOSHUA J. DEVERICKS,          :
OSCAR DEJESUS, and            :
PETER E. LITTLE               :     **CIV. NO. 18-13451 (RMB)**
                              :
          Plaintiffs          :
                              :
     v.                       :          **OPINION**
                              :
CAPE MAY (REGION) OFFICE      :
OF THE PUBLIC DEFENDER,       :
*et al.*,                     :
                              :
                              :
          Defendants          :

**BUMB**, DISTRICT JUDGE

Plaintiffs Joshua J. Devericks, Oscar DeJesus and Peter E.
Little bring this Second Amended Complaint under 42 U.S.C. § 1983.
(Second Am. Compl., ECF No. 12.) Plaintiff Devericks ("Plaintiff")
has been granted permission to proceed *in forma pauperis* under 28
U.S.C. § 1915, and this Opinion applies only to him.[1]

When a prisoner is permitted to proceed without prepayment of
the filing fee or when the prisoner pays the filing fee for a civil

---

[1] The Prison Litigation Reform Act requires each prisoner joined
in a lawsuit to pay a full individual filing fee by installment,
pursuant to 28 U.S.C. § 1915. <u>Hagan v. Rogers</u>, 570 F.3d 146, 155
(3d Cir. 2009). Joshua Devericks is the only plaintiff who has
been granted permission to proceed *in forma pauperis* in this
action. Before Oscar DeJesus and Peter E. Little may proceed, they
must submit a properly completed application to proceed *in forma
pauperis* under 28 U.S.C. § 1915 and establish their financial
eligibility to proceed without prepayment of the filing fee.

action and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court will dismiss the Second Amended Complaint for failure to state a claim.

I.   *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.  DISCUSSION

    A.    The Second Amended Complaint

3

Plaintiff alleges the following in the Second Amended Complaint.[2]

> The claims presented here by the plaintiffs address an ongoing collusion between the Cape May County Prosecutors and Public Defender Officers. These claims can not only be corroborated by supportive documents relative to just these plaintiffs['] claims, but also the statistical data which will display the high conviction rates in Cape May County of its indigent defendants in comparison to the defendants who have paid attorneys. The indigent defendants with public defenders or pool attorneys are less like to receive their full discoveries and less likely to go to trial for the collusive process which practically forces them to cope out to crimes they did not commit or cope out to excessive sentences. Both parties are complicit in the exploitation of indigent defendants.
>
> Defendant[]s Sutherland and Carruccia are the supervisory prosecutors responsible for the prosecutors who have deprived the plaintiffs of the[ir] discoveries and exculpatory evidence in violation of their rights to Due Process and Equal Protection of the Laws. Defendant[]s Sutherland and Carruccia instruct and train the prosecutors who engage in prosecutorial misconduct, aware of the deprivations taking place. These illicit practices of the prosecution are allowed to flourish unabated, uncontested by defendant Shenkus who is aware of the ongoing misconduct

---

[2] The Court does not address the allegations supporting the claims of Plaintiffs Little and DeJesus because they have not been granted *in forma pauperis* status in this action. Plaintiffs Little and DeJesus should be aware that their claims are also subject to screening under 28 U.S.C. §§ 1915(e)(2)(B) and/or 1915A(b) and, upon obtaining *in forma pauperis* status, if the complaint is dismissed as to their claims, they will each be required to pay the $350.00 filing fee in installments.

and does nothing about it. Additionally,
defendant Shenkus is responsible for the
ineffective public defenders and pool
attorneys who represented the plaintiffs in
trial court. Defendant Shenkus was, in fact,
aware of the ineffective representation for
the letters/complaints sent to him by
plaintiffs detailing the Fourth Amendment and
Sixth Amendment violations being committed.
Thus, the defendant's failure to act violated
the plaintiffs Fourth Amendment and Six
Amendment rights to Due Process and Effective
Assistance of Counsel.

Defendant Settle who, in collusion with
defendant Naughton [3] mentioned, deprived
plaintiff Devericks of his Due Process rights
in denying full discovery and withholding
exculpatory evidence. Defendant Settle's
behavior in the official capacity raises to
the level of prosecutorial misconduct in
violation of plaintiff Devericks' Equal
Protection of the Laws which safeguards
plaintiff against unethical practices
deployed to gain a conviction. Defendant
Settle has blocked plaintiff's every attempt
in exercising his Due Process rights.

…

It is further that, plaintiffs can and will
provide corroborative evidence to support and
substantiate the above claims.

(Second Am. Compl., ECF No. 1, ¶6.)

---

[3] The Court dismissed Plaintiff's § 1983 claims against Public
Defender H. Parker Smith and pool attorney Christina M. Naughton
with prejudice by Opinion and Order dated January 3, 2019.
(Opinion, ECF No. 8; Order, ECF No. 9.)

B.   Prosecutorial Misconduct Claim under 42 U.S.C. § 1983

Defendant Alex Settle is the assistant prosecutor in Plaintiff's criminal action in Cape May County. (Second Am. Compl., ECF No. 12, ¶4(d)). Plaintiff alleges Settle deprived him of discovery and withheld exculpatory evidence. (Id., ¶6.)

Prosecutors have absolute immunity under § 1983 for alleged withholding of exculpatory evidence and other activities related to discovery in a criminal prosecution. See Imbler v. Pachtman, 424 U.S. 409, (1976) (absolute prosecutorial immunity for activities that are intimately associated with the judicial phase of the criminal process); Yarris v. County of Delaware, 465 F.3d 129, 137 (prosecutors entitled to absolute immunity on claim they withheld exculpatory evidence prior to trial). Plaintiff's § 1983 claim of prosecutorial misconduct against Settle is dismissed with prejudice.

C.   Supervisory Prosecutors' Failure to Train and Supervise Claim under § 1983

Plaintiff alleges Defendants Sutherland and Carruccia, supervisory prosecutors, are responsible for the prosecutor who deprived Plaintiff of discovery and exculpatory evidence, and that they are aware of the prosecutorial misconduct and allowed it to take place by their failure to train. (Second Am. Compl., ECF No. 1, ¶4(b), (c), ¶6.)

In Van de Kamp v. Goldstein, the Supreme Court addressed whether a district attorney and his chief assistant were liable under § 1983 for failure to adequately train and supervise district attorneys and maintain information-system management on providing impeachment-related evidence concerning jailhouse informants to the defense. 555 U.S. 335, 344 (2009). The prosecutor in Goldstein's criminal action failed to produce impeachment evidence, resulting in a Giglio violation at trial. Id.

Goldstein attacked administrative procedures that are not typically entitled to absolute prosecutorial immunity. Id. Nevertheless, the Court held that the supervisory prosecutors were entitled to absolute immunity. Id. The Court explained:

> we conclude that prosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be

included in the training or the supervision or
the information-system management. And in that
sense also Goldstein's claims are unlike
claims of, say, unlawful discrimination in
hiring employees. Given these features of the
case before us, we believe absolute immunity
must follow.

Van de Kamp, 555 U.S. at 344. Thus, the Court held that supervisory

prosecutors are immune in a suit directly attacking their actions

related to an individual trial. Id. at 346. The Court further

reasoned:

[a]s we have said, the type of "faulty
training" claim at issue here rests in
necessary part upon a consequent error by an
individual prosecutor in the midst of trial,
namely, the plaintiff's trial. If, as Imbler
says, the threat of damages liability for such
an error could lead a trial prosecutor to take
account of that risk when making trial-related
decisions, so, too, could the threat of more
widespread liability throughout the office
(ultimately traceable to that trial error)
lead both that prosecutor and other office
prosecutors as well to take account of such a
risk. Indeed, members of a large prosecutorial
office, when making prosecutorial decisions,
could have in mind the "consequences in terms
of" damages liability whether they are making
general decisions about supervising or
training or whether they are making individual
trial-related decisions. Imbler, 424 U.S., at
424, 96 S.Ct. 984.

Moreover, because better training or
supervision might prevent most, if not all,
prosecutorial errors at trial, permission to
bring such a suit here would grant permission
to criminal defendants to bring claims in
other similar instances, in effect claiming
damages for (trial-related) training or

supervisory failings. Cf. *Imbler, supra*.
Further, given the complexity of the
constitutional issues, inadequate training
and supervision suits could, as in *Imbler,*
"pose substantial danger of liability even to
the honest prosecutor." *Id.,* at 425, 96 S.Ct.
984. Finally, as *Imbler* pointed out, defending
prosecutorial decisions, often years after
they were made, could impose "unique and
intolerable burdens upon a prosecutor
responsible annually for hundreds of
indictments and trials." *Id.,* at 425-426, 96
S.Ct. 984.

At the same time, to permit this suit to go
forward would create practical anomalies. A
trial prosecutor would remain immune, even for
*intentionally* failing to turn over, say *Giglio*
material; but her supervisor might be liable
for *negligent* training or supervision. Small
prosecution offices where supervisors can
personally participate in all of the cases
would likewise remain immune from prosecution;
but large offices, making use of more general
officewide supervision and training, would
not. Most important, the ease with which a
plaintiff could restyle a complaint charging
a trial failure so that it becomes a complaint
charging a failure of training or supervision
would eviscerate *Imbler*.

Van de Camp, 555 U.S. 335, 346-47 (2009).

Plaintiff's claim here is like the claim in Van de Kamp; he

seeks to hold supervisory prosecutors responsible for inadequate

training and supervision that resulted in an alleged trial error

by the prosecutor in Plaintiff's trial. Therefore, pursuant to Van

de Kamp, Defendants Sutherland and Caruccia are absolutely immune

from Plaintiff's § 1983 claims of supervisory prosecutorial misconduct and those claims are dismissed with prejudice.

### D. Ineffective Assistance of Counsel Claim Under 42 U.S.C. § 1983

Plaintiff alleges Defendant Eric R. Shenkus, as a supervisory public defender, "was aware of the ineffective representation [of Plaintiff] for the letters/complaints sent to him by plaintiffs detailing the Fourth Amendment and Sixth Amendment violations being committed." (Second Am. Compl., ECF No. 1, ¶6.)

"In order to establish a violation of 42 U.S.C. § 1983, a plaintiff 'must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution.'" Albrecht v. Hamilton, 233 F. App'x 122, 124 (3d Cir. 2007) (quoting Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994) (internal citations omitted)).

"[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981). This is so because "a public defender is not amenable to administrative direction in the same sense as other employees of the State" because a public defender "works under canons of professional responsibility that mandate his exercise of

independent judgment on behalf of the client." <u>Polk County</u>, 454 U.S. at 321. "Second, and equally important, it is the constitutional obligation of the State to respect the professional independence of the public defenders whom it engages." <u>Id.</u> at 321-22. The Supreme Court also noted that a public defender may act under color of state law while performing certain administrative and possibly investigative functions. <u>Id.</u> at 325 (citing to <u>Imbler</u>, 424 U.S. at 430-31 and n. 33).

A supervisory public defender is not acting in an investigative or administrative function when supervising or training a subordinate public defender regarding the provision of legal representation because such functions are controlled by canons of professional responsibility guiding a private attorney. <u>See</u> <u>Robinson v. San Bernardino County</u>, Case No. 5:18-cv-00906 VAP (ADS), 2019 WL 2616941 at *8 (C.D. Cal. May 3, 2019) (finding alleged failure to train and supervise subordinate public defenders in protecting a client's Sixth and Fourteenth Amendment rights is measured and controlled by legal standards and, thus, supervisory public defenders are not acting in an administrative capacity). Therefore, the § 1983 claim against Defendant Shenkus based on supervisory liability for ineffective assistance of counsel is dismissed with prejudice.

E.   Conspiracy Claim under 42 U.S.C. § 1983

The Court construes Plaintiff's allegation that the Cape May Prosecutors and Public Defender Officers colluded to force him plead guilty to an excessive sentence without first obtaining full discovery as a conspiracy claim under 42 U.S.C. § 1983. (Second Am. Compl., ECF No. 1, ¶6.) Plaintiff further alleges that Deputy Public Defender Eric R. Shenkus "in collusion with the prosecution defendant(s), failed to intervene or prevent the prosecutorial misconduct in violation [of] plaintiff[']s Fourteenth Amendment Rights to the United States Constitution." (Id., ¶4(f)).

A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678. Plaintiff alleges that his claim can be corroborated by supportive documents but he does not allege what happened to lead him to the conclusion that there was collusion between the prosecution and his defense. Therefore, Plaintiff has failed to state a claim of conspiracy under § 1983, and this claim is dismissed without prejudice.

F.   Heck-bar

Although Plaintiff may amend his § 1983 conspiracy claim, he should be aware that if his allegations necessarily imply the invalidity of his conviction(s), for example if he alleges that he was coerced into pleading guilty and his conviction(s) is invalid,

12

his claims would be barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994). <u>See</u> <u>Newton v. City of Wilmington</u>, 676 F. App'x 106, 108 (3d Cir. 2017) (noting <u>Heck</u> would bar claims that guilty pleas were invalid because they were obtained through fraud and threats). Prior to bringing a civil action based on claims that would impugn the validity of a criminal conviction, a plaintiff must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." <u>Heck</u>, 512 U.S. at 486-87.

G.   <u>Request for Appointment of Pro Bono Counsel</u>

A district court has authority to appoint counsel to represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1), which provides: "[t]he court may request an attorney to represent any person unable to afford counsel." There is no statutory right to appointed counsel. <u>Tabron v. Grace</u>, 6 F.3d 147, 153 (3d Cir. 1993). Before a court may exercise its discretion to appoint counsel, it must first determine that Plaintiff's claim(s) has some merit in fact and law. <u>Id.</u> at 155.

Because the Court has determined that Plaintiff fails to state a claim in the Second Amended Complaint, pursuant to 28 U.S.C. §

1915(e)(1), the Court will deny Plaintiff's request for appointment of counsel (ECF No. 12 at 1).

III. CONCLUSION

For the reasons discussed above, the Court dismisses Plaintiff Deverick's § 1983 claims against Defendants Sutherland and Carruccia with prejudice based on absolute prosecutorial immunity, dismisses with prejudice for failure to state a claim Plaintiff's § 1983 claim of ineffective assistance of counsel against Defendant Shenkus in his role as supervisor of Plaintiff's public defender and/or pool attorney, and dismisses Plaintiff's conspiracy claim against Defendant Shenkus under § 1983 without prejudice.

An appropriate order follows.

DATE: <u>August 14, 2019</u>          <u>s/Renée Marie Bumb</u>
                                      **RENÉE MARIE BUMB**
                                      **United States District Judge**